TRACY L. WILKISON
Acting United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
MARK TAKLA (Cal. Bar No. 218111)
Assistant United States Attorney
Deputy Chief, Terrorism and Export Crimes Section
    United States Attorney's Office
    411 West Fourth Street, Suite 8000
    Santa Ana, California 92701
    Telephone: (714) 338-3591
    Facsimile: (714) 338-3561
    Email:     mark.takla@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. SA CR 20-188-JLS |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION; <u>EXHIBITS</u> |
| v. | |
| JAMES ROBERT SCHWEITZER, | Hearing Date: September 3, 2021<br>Hearing Time: 8:30 a.m. |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Mark Takla, hereby files its Sentencing Position for defendant JAMES ROBERT SCHWEITZER.

//

//

This sentencing position is based upon the attached memorandum of points and authorities, the Presentence Investigation Report, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: August 6, 2021

Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division

*/s/*
MARK TAKLA
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   Introduction**

Defendant James Robert Schweitzer – formerly a project engineer with a cleared Department of Defense ("DoD") contractor ("Company #1") – intentionally interfered with U.S. government communication lines by spamming unclassified DoD computer systems with classified national defense information causing cleanup costs of approximately $15,000.  Defendant pleaded guilty to one count of Malicious Interference with Communication Lines in violation of 18 U.S.C. § 1362.

The United States Probation Office ("USPO") filed its Presentence Investigation Report ("PSR"), concluding that: (1) defendant's base offense level is 6; (2) defendant's total offense level is 6 (applying a two-level enhancement for loss in excess of $6,500 and applying a two-level reduction for acceptance of responsibility); (3) defendant's criminal history category is I; (4) defendant's guidelines sentencing range is 0 to 6 months of imprisonment; (5) defendant must pay a $100 mandatory special assessment; and (6) defendant must pay restitution in the amount of $15,000 and a fine in the amount of $1,000.  (PSR, at 3; Recommendation Letter, at 1-2.)  The USPO recommended a sentence of two years of probation.  (Id.)

The government agrees with the USPO's Guidelines calculation, recommended sentence, and recommended restitution order and fine.  For the reasons outlined below, the government submits that this sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a).

## II. BACKGROUND

The following facts are taken from the factual basis defendant admitted to at his change of plea hearing:

> Defendant JAMES ROBERT SCHWEITZER was formerly employed by a defense contractor ("Company #1") located in the Central District of California. Defendant worked as a software engineer from 2003 through July 2016 and held a security clearance from 2003/2004 until 2014. During his employment, defendant worked on a Department of Defense ("DoD") program ("the DoD program"), portions of which were classified. In 2014, defendant lost his security clearance due to his use of medical marijuana.
>
> In 2016, the defendant submitted a complaint to the DoD Hotline, which is a website that can be used to make whistleblower complaints. Defendant's complaint was later determined to contain classified information. Also in 2015 or 2016, defendant began sending classified and national defense information regarding the DoD program on unclassified systems to DoD employees, Company #1 employees, and U.S. news outlets. In these communications, defendant threatened to continue to disclose classified and national defense information until he received a written statement from DoD and Company #1 that DoD and Company #1 engaged in security violations defendant alleged to have occurred. Defendant further stated that he intended to use DoD's and Company #1's statements against them in a lawsuit.
>
> From April 2019 through March 2020, defendant emailed and publicly posted classified and national defense information related to the DoD program to a Social Media account he operated (defendant's "Social Media Account"). Defendant advertised his publication of classified and national defense information on his Social Media Account via email and other social media accounts he operated. Defendant also emailed DoD employees, Company #1 employees, and U.S. news outlets, advising them of his posting and inviting them to visit his Social Media Account to view the information.
>
> At no time was defendant authorized to post or transmit classified and national defense information. <u>Defendant knew that the public disclosure of such information was likely to cause serious damage to national security and that U.S. adversaries could take advantage of the information defendant published online</u> and transmitted to persons without the required security clearances and using unsecured systems.
>
> From 2018 through May 2020, DoD and FBI personnel repeatedly warned defendant against disclosing classified

and national defense information and transmitting classified information on unclassified networks and using unclassified communication facilities.  Defendant ignored these warnings and, in response to these warnings, threatened to continue disclosing classified and national defense information.  For example, during a recorded May 21, 2020 telephone call with an FBI special agent, defendant threated to "contaminate . . . [at] least a dozen government servers with classified data."  On May 27, 2020, defendant sent an email to several DoD employees with an attachment containing classified and national defense information and stated, "Be forewarned, each government and [Company #1] recipient should lose at least a half day of lost productivity (based on the process I was required to follow as a cleared [Company #1] employee)."

As a result of defendant's unauthorized disclosures including his May 27, 2020 email, DoD was forced to undertake costly security protocols to purge classified and national defense information from its unclassified computer network and computer terminals.  These safety procedures interfered with DoD employees' ability to conduct their duties, and DoD spent approximately $15,000 to purge classified and national defense information from DoD's unclassified network and computer terminals.

Defendant admits that he willfully and maliciously injured and interfered with the working of a communications systems operated and controlled by the United States, namely, DoD's unclassified network and computer terminals, by transmitting classified and national defense information to DoD's unclassified systems.  At all times, defendant knew that the communication systems would have to be purged of the classified information, and intended to cause damage to the communication systems by sending classified information on them.

(Plea Agreement ¶ 10 (emphasis added).)

## III. GUIDELINES CALCULATIONS

Consistent with the plea agreement, the USPO calculated a total offense level of 6 based on the following calculation:

| | | |
|---|---|---|
| Base Offense Level: | 6 | U.S.S.G. § 2D1.1(a)(5) |
| Greater than $6,500 in damage | +2 | U.S.S.G. § 2D1.1(b)(12) |
| Acceptance of responsibility: | <u>-2</u> | U.S.S.G. § 3E1.1(a)-(b) |
| Total | 6 | |

3

(PSR, at 3; Recommendation Letter, at 1-2.) Defendant is in criminal history category I. The government concurs with the USPO's guideline calculations and criminal history category. Defendant's guidelines range is 0 to 6 months of imprisonment.

**IV. DEFENDANT'S OBJETIONS TO THE PRESENTENCE REPORT**

Paragraph 16. The government believes July 2016 is correct date when defendant began sending classified information. The government concurs that this is not a material dispute with the presentence report.

Paragraph 18. The government concurs that the call was on July 25, 2018.

Paragraphs 22 and 23. The government concurs the search was on November 14, 2018 and conducted by the U.S. Army Criminal Investigation Division.

The government does not object to the remaining of defendant's changes.

**V. DEFENDANT'S MOTIVATION**

Consistent with the plea agreement, the government continues to believe that a probationary sentence is appropriate. Nonetheless, a statement defendant made to the USPO warrants clarification. In his interview with the USPO, defendant appeared to claim an altruistic motive for committing the offense in this case. (PSR ¶ 35.) ("Schweitzer explained that a motivation he had for committing the instant offense, and his whistleblowing activities, was his worry adversarial countries of the United States would exploit, or had exploited, the vulnerabilities in his work."). Even if his interest in informing the DoD of security violations at his place of employment was altruistic and not the product of a personal workplace

4

grievance, his decision to expose national defense information by posting it on public websites was a potentially dangerous act of retaliation.  This latter act was anything but altruistic.  Moreover, his statement to the USPO is inconsistent with both his actions and his admissions to the FBI.

The government concurs that defendant initially made a DoD Inspector General complaint.  DoD found his first complaint – that he was given incorrect advice about whether he could use medical marijuana – substantiated.  (Ex. A.)  DoD found his second complaint – that he inappropriately worked on a classified project without a security clearance – unfounded.  (Id.)  Defendant was dissatisfied with this response, therefore he knowingly began using classified information to get DoD to pay attention to his complaints.  (Ex. B.)  In the end, defendant used classified information and the threat of dissemination of classified information in an attempt to obtain an admission that his company and the DoD violated classified information security protocols.  (Ex. C (stating he hoped to get "written apologies" and then stated "we need to talk about damages and . . . penalties").)  As defendant admitted in his factual basis, defendant intended a lawsuit, (Plea Agreement ¶ 10; Ex. D), and defendant needed an admission from the DoD regarding the security violations at Company #1 in order to bring his lawsuit.  Regardless of whether DoD's determination of defendant's security violation complaint was correct, defendant demonstrated a complete disregard for the national security of the United States when he publicly posted the classified national defense information online.
///

Defendant posted the materials online knowing of the consequences of his action. As he admitted in his factual basis, "[d]efendant knew that the public disclosure of such information was likely to cause serious damage to national security and that U.S. adversaries could take advantage of the information defendant published online." (Plea Agreement ¶ 10.) Earlier, he told the FBI:

> SM: Which, t-this, again, not meant to shock or reveal anything new, this is just confirming stuff so we know, going forward, so we don't get too far off-track from each other. Umm . . . and that the information we've talked a little bit about what that information is with radar and stuff, but that, the nature of that information is such that could result in uh, injury or death of uh—
>
> JS: [OV] Mhm—
>
> SM: [OV] American equities, either abroad or locally. [background noise]
>
> JS: Oh, yeah.
>
> SM: [OV] Alright
>
> JS: I totally, totally understand that, umm . . . a-a-and I understand yeah, the-the ramifications and the costs of that, as well, too . . . yes—

(Ex. E.)[1]

Defendant further stated:

> JS: [OV] —because you guys have been listening, and you guys have been working with me, as opposed to against me. You haven't intimidated or threatened me. You haven't dismissed me. So no, we're working cooperatively together. Umm, my hope is that we are going to find— and-and-and I-I know I cannot dictate schedule here. I get that, I get that. Uh, but, as long as I see steady progress towards my truth, yeah. We're on the same page. We're on the same page. It w- it was agonizing crossing that line to post this stuff, because I am fully aware of the body count. [background noise] That's my phone, which I'm going to ignore.

(Ex. F.)

---

[1] "JS" refers to defendant and "SM" are the initials of the interviewing FBI special agent.

6

     Defendant posted classified national defense information on a public website.  His actions were not altruistic, but selfish.  Defendant made this information available to anyone who might come across it, including adversaries of the United States with full awareness of the "body count" or consequences of his actions.  As a result, the government's recommended sentence is consistent with the plea agreement and strikes an appropriate balance among the statutory sentencing factors.

## VI.   CONCLUSION

     For the foregoing reasons, the government recommends the Court sentence defendant to two years of probation, restitution in the amount of $15,000, a fine of $1,000, and a mandatory special assessment of $100.  The restitution payment is to be paid to the following:

     Defense Finance & Accounting Service
     Department 3300
     ATTN: Special Actions
     8899 East 56th Street
     Indianapolis, IN 46249-3300

DECLARATION OF MARK TAKLA

I, Mark Takla, declare as follows:

1. I am the Assistant United States Attorney assigned to this matter. I have knowledge of the facts set forth herein and could and would testify to those facts fully and truthfully if called and sworn as a witness.

2. Exhibit A is a true and correct copy of the Department of Defense response to defendant's Inspector General complaint from the investigative file.

3. Exhibit B is a true and correct copy of defendant's public social media posts from the investigative file.

4. Exhibits C through F are true and correct copies of a transcript of defendant's interviews with the FBI from the investigative file.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed in Santa Ana, California, on August 6, 2021.

*Mark Takla*
MARK TAKLA